# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

**RYAN BIBB**
15289 Smart Cole Road
Ostrander, OH 43061-9318

         Plaintiff,

  v.

**PREMIER BANK**
c/o Jude J. Nohra
275 West Federal Street
Youngstown, OH 44503

         Defendant.

Case No.

**COMPLAINT FOR DAMAGES**

**JURY DEMAND ENDORSED HEREON**

Plaintiff Ryan Bibb, through counsel, states as follows for his *Complaint for Damages* against Defendant Premier Bank (the "Complaint"):

## PARTIES, JURISDICTION, AND VENUE

1.　　Plaintiff Ryan Bibb ("Plaintiff" or "Bibb"), is the owner of real property and improvements thereupon located at and commonly known as 15289 Smart Cole Road, Ostrander, Ohio 43061-9318 (the "Home").

2.　　On or about November 20, 2019, Plaintiff executed a note in the amount of Three Hundred Fifty-Seven Thousand Dollars ($357,000.00) payable to Home Savings Bank ("HSB") (the "Note") and a contemporaneous mortgage on the Home securing the Note (the "Mortgage") (collectively, the "Loan") for the purchase of and construction of the Home. *See*, a copy of the Mortgage, attached as **Exhibit 1**.

3.　　Plaintiff currently maintains the Home as his primary, principal residence, and has so maintained the Home for all times relevant to the allegations of this Complaint.

4. Defendant Premier Bank ("Defendant" or "Premier") is a federal depository institution incorporated under the laws of the State of Ohio, with its principal place of business located in Defiance, Ohio.

5. Premier is the current servicer and creditor of the Loan having Premier obtained servicing rights to and ownership of the Loan through HSB's merger out of existence and into Premier effective January 31, 2020.

6. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Truth in Lending Act, 12 U.S.C. §§ 1601, *et seq*. ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

7. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

8. Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) Premier's corporate headquarters and/or principal place of business are located within this District.

### SUMMARY OF RESPA AND FDCPA CLAIMS

9. This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X") and 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z").

10. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) and the Mortgage servicing Rules Under the Truth in Lending Act, 78 F.R. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

12.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

13.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

14.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

15.     Plaintiff asserts claims for relief against Premier for violations of the specific rules under Regulation X, as set forth, *infra*.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." 78 Fed. Reg. 10696, 10739.

16.     Plaintiff has a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

17.     TILA provides that a creditor or servicer of a home loan shall provide an *accurate* payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

18.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

19.     Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

20.     The Loan is a closed-end consumer credit transaction secured by their respective dwellings as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

21.     Premier is the creditor of the Loan as defined and contemplated by TILA and Regulation Z as it succeeded to the interests of the original lender, HSB, as the surviving entity of their merger.

22.     Plaintiff asserts claims for relief against Premier for violations of the specific rules under Regulation Z, as set forth, *infra*.

23.     Plaintiff has a private right action under TILA pursuant to 15 U.S.C. § 1640(a) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

24.     The Electronic Funds Transfer Act (EFTA) provides that "a financial institution shall be liable to a consumer for all damages proximately caused by—(1) the financial institution's failure to make an electronic funds transfer in accordance with the terms and conditions of an account, in the correct amount or in a timely manner when properly instructed to do so by the consumer." 15 U.S.C. § 1693h(a).

25.     Plaintiff is a consumer as defined and contemplated by the EFTA as he is a natural person. *See*, 15 U.S.C. § 1693a(6).

26.     Plaintiff asserts claims for relief against Premier for violations of the specific rules under the EFTA, as set forth, *infra*.

27.     Plaintiff has a private right action under the EFTA pursuant to 15 U.S.C. § 1693m for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## STATEMENT OF FACTS

28.     Following the merger of HSB into Premier, Plaintiff discussed setting up automatic periodic payments on the Loan through a savings account he maintained with Chase Bank.

29.     On or about June 15, 2020, Michele Delgross ("Delgross"), Branch Manager for the Streetsboro Branch of Premier, emailed Plaintiff to inquire whether he was still interested in setting up automatic periodic payments on the Loan.

30.     Plaintiff, per Delgross's instructions, executed and submitted the necessary paperwork to set up the automatic periodic payments on the Loan on or about June 15, 2020.

31.     Premier, however, failed to withdraw payments for at least two (2) months in and/or prior to July 2020 resulting in Premier claiming that the Borrower was at least two (2) months delinquent on the Loan.

32.      Specifically, Premier generated two (2) periodic billing statements for the payment due and owing for August 1, 2020:

> a.  A loan statement dated July 16, 2020, stating that the total due and owing for the August 1, 2020 payment was $6,558.95 (the "July 16 Statement"); and,
>
> b.  A loan statement dated July 30, 2020, stating that the total due and owing for the August 1, 2020 payment was $4,725.25 (the "July 30 Statement").

*See*, a copy of the July 16 Statement, attached as **Exhibit 2**; *see*, a copy of the July 30 Statement, attached as **Exhibit 3**.

33.     Plaintiff did not receive the July 16 Statement or the July 30 Statement (collectively, the "Statements") until requesting a copy of them from Premier through email communication with Delgross and Kristie Sabo, a personal banker with Premier on or around September 14, 2020 and September 15, 2020.

34.     Plaintiff had not received any periodic billing statements at the Home address from Premier regarding the Loan since Premier's merger with HSB.

35.     Plaintiff was unaware that Premier was not drawing the payments from his Chase savings account for the monthly payments until receiving the Statements on or about September 15, 2020.

36.     On or about September 3, 2020, an ACH/autopayment towards the Loan from Plaintiff's Chase savings account in the amount of $1,664.01 was attempted, but reversed the same day.

37.     On or about October 7, three (3) payments were attempted towards the Loan from Plaintiff's Chase savings account in the amounts of $1,553.93, $110.08, and $1,000.06, respectively, but reversed the same day.

38.     Premier did not attempt to make any further automatic payment withdrawals towards the Loan from Plaintiff's Chase savings account for the remainder of 2020.

39.     Unaware that Premier was claiming him to be delinquent on the Loan, Plaintiff sought to refinance the Loan to take advantage of available lower interest rates and was initially pre-approved for a refinance at an interest rate of 2.7500% with AmeriSave Mortgage Corporation ("AmeriSave"), nearly half the current interest rate under the Loan. *See*, a copy of the Closing Disclosure for the attempted refinance transaction, attached as **Exhibit 4**.

40.     Throughout the course of the refinance application process with AmeriSave, Plaintiff remitted a total of Seven Hundred Fifty ($750.00) for fees and costs.

41.     By this time, however, Premier had reported Plaintiff as at least sixty (60) days delinquent on his obligations under the Loan to one (1) or more of the three (3) major credit reporting agencies, Equifax, Experian, and/or TransUnion which negatively impacted his credit standing.

42.     When AmeriSave pulled Plaintiff's credit report and discovered the reported sixty (60) day delinquencies, AmeriSave denied him for credit and Plaintiff lost the opportunity to refinance at the expected lower interest rate. *See*, a copy of the Statement of Credit Denial dated December 5, 2020, attached **Exhibit 5**.

43.     Specifically, AmeriSave stated that its principal reason for the credit denial was "Unacceptable Payment Record on Previous Mortgage". *See*, Exhibit 3.

44.     By this point in time, Plaintiff's credit score had dropped from approximately 770 to approximately 540.

45.     Concerned as to why Premier was claiming he was delinquent on his obligations under the Loan and seeking help to rectify the problems with his Loan, Plaintiff retained undersigned counsel to request information related to the loan and to have Premier correct its erroneous actions.

46.     On or about December 17, 2020, Plaintiff, through counsel, sent a notice of error captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(k)(1)(C) for failing to withdraw a borrower's payments per an autopay agreement and otherwise in violation of 12 U.S.C. § 2605(k)(1)(E); notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) and under 12 U.S.C. § 2605(k)(1)(C) for imposition of fees for which there was no reasonable basis to impose and otherwise in violation of 12 U.S.C. § 2605(k)(1)(E)" ("NOE #1") via Certified Mail [Tracking No. 70201290000133624822] to Premier at the address designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of NOE #1 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 6**.

47.     Through NOE #1, Plaintiff alleged that Premier committed errors in the servicing of the Loan, sperically, by failing to withdraw payments from Plaintiff's Chase savings account despite executing the necessary documents for the same, which constitute errors under 12 C.F.R. § 1024.35(b)(11), and by charging improper fees against the Loan, including late fees which were improper as they resulted directly from Premier's other errors, which constitute covered errors under 12 C.F.R. § 1024.35(b)(5). *See*, Exhibit 6.

48.     Premier received NOE #1 at the Designated Address on or before December 28, 2020. *See*, Exhibit 6.

49.     On or about December 21, 2020, Plaintiff, through counsel, sent two (2) separate requests for information (the "RFIs") via Certified Mail to Premier at the Designated Address, specifically:

  a.  A request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) and 12 C.F.R. § 1026.36(c)(3), seeking information as to the identity of and contact information for the owner of the Loan and a payoff statement for the Loan [Tracking No. 70151520000166359827] ("RFI #1"); and,

  b.  A request for information pursuant to 12 C.F.R. § 1024.36 requesting information and/or documents related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note, Premier's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation [Tracking No. 70151520000166359834] ("RFI #2").

*See*, a copy of RFI #1 with tracking information from the website for the USPS (www.usps.com), attached as **Exhibit 7**; *see also*, a copy of RFI #2 with tracking information from the website for the USPS (www.usps.com), attached as **Exhibit 8**.

50. Premier received each of the RFIs at the Designated Address on or before December 28, 2020. *See*, Exhibits 5 and 6.

51. Premier meanwhile sent correspondence dated December 24, 2020 stating that the Loan was in default and that Plaintiff needed to bring the Loan current on or before January 29, 2021 (the "Default Notice"). *See*, a copy of the Default Notice, attached as **Exhibit 9**.

52. To date, Plaintiff has not received any correspondence from Premier relating to, acknowledging receipt of, or in substantive response to NOE #1 or either of the RFIs.

53. On or about February 1, 2021, Plaintiff, through counsel, sent a notice of error captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(k)(1)(C) for failure to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(k)(1)(D) and (E); notice of error pursuant to 12 C.F.R. § 1024.35(b)(6) and 12 U.S.C. § 2605(k)(1)(C) for failure to provide a payoff statement in violation of 12 C.F.R. § 1026.36(c)(3)" ("NOE #2") via Certified Mail [Tracking No. 70203160000059632684] to Premier at the Designated Address. *See*, a copy of NOE #2 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 10**.

54. Through NOE #2, Plaintiff alleged that Premier committed errors related to the Loan by failing to provide a payoff statement for the Loan as requested through RFI #1, a covered error under 12 C.F.R. § 1024.35(b)(6) and for failing to provide the remainder of the information requested through RFI #1, an error pursuant to 12 C.F.R. § 1024.35(b)(11) and in violation of 12 U.S.C. § 2605(k)(1)(D). *See*, Exhibit 10.

55.     Premier received NOE #2 at the Designated Address on or before February 17, 2021. *See*, Exhibit 10.

56.     On or about February 23, 2021, Plaintiff, through counsel, sent a notice of error captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to acknowledge or properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E); notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to acknowledge or properly respond to notice of error as required by 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1) (C) and (E)" ("NOE #3") via Certified Mail [Tracking No. 70201810000156130247] to Premier at the Designated Address. *See*, a copy of NOE #3, attached as **Exhibit 11**.

57.     Through NOE #3, Plaintiff alleged that Premier committed errors related to the Loan by failing to respond to RFI #2 or NOE #1, each such failure constituting an error pursuant to 12 C.F.R. § 1024.35(b)(11) and the failure to respond to NOE #1 further being in violation of 12 U.S.C. § 2605(k)(1)(C). *See*, Exhibit 11.

58.     On information and belief, Premier received NOE #3 at the Designated Address within a week of mailing.

59.     To date, Plaintiff has not received any correspondence from Premier relating to, acknowledging receipt of, or in substantive response to NOE #2 or NOE #3.

60.     To mitigate the harm of Premier's actions and to avoid the risk of threatened foreclosure, Plaintiff paid all amounts past due on the Loan in on or prior to January 8, 2021, a total of $12,320.29.

## IMPACT UPON AND DAMAGES SUFFERED BY PLAINTIFF

61.     Had Premier not failed to properly handle the authorized automatic payments from Plaintiff's Chase savings account, Plaintiff would not have lost the opportunity to refinance the Loan as attempted with AmeriSave.

62.     Premier's improper actions caused Plaintiff to suffer from other actual and proximate damages including:

a.  On information and belief, the Loan has been assessed improper fees and charges due to the delinquency caused by Premier's actions;

b.  Significant harm to his credit standing which resulted in the denial of credit from AmeriSave;

c.  Legal fees and expenses to submit the RFIs and NOE #1 to Premier in a good faith attempt to amicably resolve this matter or to have Premier mitigate the harm caused to Plaintiff;

d.  Legal fees and expenses to submit NOE #2, and NOE #3 to Premier which would not have been necessary but for Premier's failure or refusal to respond to the RFIs and NOE #1;

e.  The loss of at least $750.00 and the loss of use thereof, in application fees and costs paid to AmeriSave without receiving the benefit of such amounts by receiving the expected refinance of the Loan

f.  The loss of the opportunity to refinance the Loan through AmeriSave at an interest rate of 2.7500% which would have substantially reduced the amounts Plaintiff would have been obligated for interest payments on the loan for his Home;

g.  Severe emotional distress driven by this delinquency caused by Premier's actions and by fear that this delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless Plaintiff paid for fees which were not warranted which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## COUNT ONE:
## VIOLATIONS OF 12 C.F.R. § 1024.35(d) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely acknowledge NOE #1, NOE #2, and NOE #3)

63.  Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth hereon.

64.  "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

65.  Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

66.  A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

67.  "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.35(d), *see also*, 12 U.S.C. § 2605(e)(1).

68.     NOE #1, NOE #2, and NOE #3 (collectively, the "NOEs") each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 6, 10, and 11.

69.     Plaintiff sent each of the NOEs to Premier at the Designated Address and Premier received each of the NOEs at the Designated Address. *See*, Exhibits 6, 10, and 11.

70.     Premier failed to provide any written acknowledgment of its receipt of each of the NOEs.

71.     Premier failed to timely acknowledge each of the NOEs as required by 12 C.F.R. § 1024.35(d) and/or 12 U.S.C. § 2605(e)(1) which constitutes three (3) distinct violations of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E), one such violation for each of the NOEs Premier failed to timely acknowledge.

72.     Premier's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

73.     As a result of Premier's actions, Premier is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1), including, but not limited to incurring legal fees and expenses for preparing and sending NOE #3 which would not have been necessary but for Premier's failure to properly acknowledge NOE #1.

74.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO:
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely and properly respond to NOE #1 and NOE #2)

75.     Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth hereon.

76.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

77.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

78.     A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

79.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

80.     "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

81.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

82.     NOE #1 and NOE #2 each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 4 and 8.

83.     Plaintiff sent NOE #1 and NOE #2 to Premier at the Designated Address and Premier received each such notice at such address.

84.     Through NOE #1, Plaintiff alleged that Premier committed errors in the servicing of the Loan, sperically, by failing to withdraw payments from Plaintiff's Chase savings account despite executing the necessary documents for the same, which constitute errors under 12 C.F.R. § 1024.35(b)(11), and by charging improper fees against the Loan, including late fees which were

improper as they resulted directly from Premier's other errors, which constitute covered errors under 12 C.F.R. § 1024.35(b)(5). *See*, Exhibit 6.

85.     Premier failed to provide a written response to NOE #1 within thirty (30) business days of receiving NOE #1 as required by 12 C.F.R. § 1024.35(e)(1). *See*, 12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

86.     But for Premier's failure to properly respond to NOE #1, Plaintiff would not have had to incur legal fees and expenses to submit NOE #3 to Premier. *See*, Exhibit 11.

87.     Through NOE #2, Plaintiff alleged that Premier committed an error related to the Loan by failing to provide a payoff statement for the Loan as requested through RFI #1, a covered error under 12 C.F.R. § 1024.35(b)(6). *See*, Exhibit 10.

88.     Premier failed to provide a written response to NOE #2 within seven (7) business days of receiving NOE #2 as required by 12 C.F.R. § 1024.35(e)(1). *See*, 12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

89.     Premier's failure to timely and properly respond to NOE #1 and NOE #2 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 and NOE #2 constitute two (2) violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Plaintiff has suffered actual damages as detailed, *supra*.

90.     Premier's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

91.     Premier's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

92.     As a result of Premier's actions, Premier is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

93.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
### VIOLATIONS OF 12 C.F.R. § 1024.36(c) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely acknowledge RFI #1 and RFI #2)

94.     Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth hereon.

95.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

96.     "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a)

97.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

98.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.36(c), *see also*, 12 U.S.C. § 2605(e)(1).

99.     The RFIs each constitute a request for information as defined by 12 C.F.R. § 1024.35(a) as each is a "written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan

account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." *See*, Exhibits 7 and 8.

100.    Plaintiff sent each of the RFIs to Premier at the Designated Address and Premier received each of the RFIs at the Designated Address. *See*, Exhibits 7 and 8.

101.    Premier failed to provide any written acknowledgment of its receipt of either of the RFIs. *See*, Exhibits 7 and 8.

102.    Premier failed to timely acknowledge each of the RFIs as required by 12 C.F.R. § 1024.36(c) and/or 12 U.S.C. § 2605(e)(1) which constitutes two (2) clear, distinct, and separate violations of 12 C.F.R. § 1024.36(c) and 12 U.S.C. § 2605(k)(1)(E), one (1) such violation for each of the RFIs Premier failed to timely acknowledge in writing.

103.    Premier's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

104.    As a result of Premier's actions, Premier is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1), including, but not limited to incurring legal fees and expenses for preparing and sending NOE #2 and NOE #3 which would not have been necessary but for Premier's failure to properly acknowledge each of the RFIs.

105.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT FOUR:
### VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)

### (Failure to timely and properly respond to RFI #1 and RFI #2)

106.    Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth hereon.

107.    12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

108.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

109.    A servicer must respond to a request for information by:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

110.    Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A)    Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B)    For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

111.    Each of the RFIs is a request for information as defined by 12 C.F.R. § 1024.36(a) as it contains Plaintiff's name, loan number, property address, and request information related to the Loan. *See*, Exhibits 7 and 8.

112.    Plaintiff sent each of the RFIs to Premier at the Designated Address and Premier received each of the RFIs at the Designated Address on or before December 28, 2020. *See*, Exhibits 5 and 6.

113.    Through RFI #1, Plaintiff requested that Premier provide the identity of and contact information for the owner or investor of the Loan. *See*, Exhibit 9.

114.    Premier was required to provide the identity of and contact information for the owner or investor of the Loan within ten (10) business days of December 28, 2020—on or before January 12, 2021. *See*, Exhibit 9; 12 C.F.R. § 1024.36(d)(2)(i)(A).

115.    Premier did not provide the identity of and contact information for the owner or investor of the Loan within ten (10) December 28, 2020 days of December 28, 2020 as required by 12 C.F.R. § 1024.36(d), nor has Plaintiff or his counsel received any such response.

116.    Premier's failure to provide a timely written response to RFI #1 constitutes a violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k) and has caused Plaintiff to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending NOE #2 which would not have been necessary but for Premier's failure to properly respond to RFI #1.

117.    Through RFI #2, Plaintiff requested that Premier provide information and/or documentation related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note,

Premier's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation. *See*, Exhibit 10.

118.    Premier was required to provide a written response to RFI #2 within thirty (30) business days of December 28, 2020—on or before February 10, 2021. *See*, Exhibit 8; 12 C.F.R. § 1024.36(d)(2)(i)(B).

119.    Premier did not provide a written response to RFI #2 within thirty (30) business days of December 28, 2020 as required by 12 C.F.R. § 1024.36(d), nor has Plaintiff or his counsel received any such response.

120.    Premier's failure to provide a timely written response to RFI #2 constitutes a violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k) and has caused Plaintiff to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending NOE #3 which would not have been necessary but for Premier's failure to properly respond to RFI #2.

121.    Premier's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of Premier's obligations under RESPA and Regulation X.

122.    Premier's conduct as pleaded, *supra*, shows a conscious disregard for Plaintiff's rights and Premier's obligations under RESPA and Regulation X.

123.    As a result of Premier's actions, Premier is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

124.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FIVE:
## VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)

### (Failure to timely provide a payoff statement)

125.    Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth hereon.

126.    Plaintiff submitted RFI #1, which contained a request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), to Premier on December 21, 2020 and Premier received RFI #1 on or before December 28, 2020. *See*, Exhibit 7.

127.    Premier failed to timely provide a payoff statement for the Loan in response to RFI #1 within seven (7) business days of receipt as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

128.    Plaintiff was harmed as a result of Premier's actions as further described *supra*, including, but not limited to, legal fees and costs incurred with sending NOE #2 which would not have been necessary but for Premier's failure to provide a payoff statement.

129.    As a result of its actions, Premier is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3).

## COUNT SIX:
## VIOLATIONS OF THE EFTA, 15 U.S.C. § 1693, *et seq.*

### (Failure to make electronic transfers of funds from Plaintiff's bank account)

130.    Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth hereon.

131.    "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund

transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." 15 U.S.C. § 1693e.

132. "[A] financial institution shall be liable to a consumer for all damages proximately caused by—(1) the financial institution's failure to make an electronic funds transfer in accordance with the terms and conditions of an account, in the correct amount or in a timely manner when properly instructed to do so by the consumer." 15 U.S.C. § 1693h.

133. Plaintiff, per Delgross's instructions, executed and submitted the necessary paperwork to set up the automatic periodic payments in the form of electronic funds transfers from his Chase savings account towards the Loan on or about June 15, 2020.

134. Premier, despite being instructed to make the electronic funds transfers for the amounts due and owing for the periodic payments for the Loan each month, failed to make such electronic funds transfers in and for the months of July 2020, August 2020, November 2020, and December 2020.

135. Premier, despite being instructed to make the electronic funds transfers for the amounts due and owing for the periodic payments for the Loan each month, reversed the four (4) separate electronic funds transfers in the months of September 2020 and October 2020 in satisfaction of the amounts due and owing for such months.

136. Premier violated the EFTA by failing to make the electronic funds transfers in and for the months of July 2020, August 2020, November 2020, and December 2020.

137. Premier violated the EFTA by reversing the four (4) separate electronic funds transfers in the months of September 2020 and October 2020 in satisfaction of the amounts due and owing for such months.

138.     Premier's actions in failing to make and improperly reversing the aforementioned electronic funds transfers constitute eight (8) violations of 15 U.S.C. § 1693h., one (1) such violation for each of the electronic funds transfers Premier failed to make or otherwise improperly reversed.

139.     As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, as further described, *supra*, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1693m.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ryan Bibb prays that this Court grant judgment against Defendant Premier Bank, and award him the following:

A.     Actual damages from Defendant Premier Bank in an amount to be determined at trial for the allegations contained in Counts One through Six;

B.     An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Premier Bank for each violation of RESPA contained in Counts One through Four for a total of Eighteen Thousand Dollars ($18,000.00)

C.     An award of statutory damages of Four Thousand Dollars ($4,000.00) from Defendant Premier Bank for the violations of TILA and Regulation Z contained in Count Five;

D.     An award of statutory damages of One Thousand Dollars ($1,000.00) from Defendant Premier Bank for the violations of the EFATA contained in Count Six;

E.     For attorney's fees and costs as to Counts One through Six;

F.     For such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Ryan Bibb*

## **JURY DEMAND**

Plaintiff Ryan Bibb hereby respectfully demands a trial by jury on all such claims that may be so tried.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law

*Counsel for Plaintiff Ryan Bibb*